

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2004

# Hartono v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4243

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hartono v. Atty Gen USA" (2004). *2004 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4243

———

SETIAWAN HARTONO; YENNY IRAWATI DOLLY; FIDELIA HARTONO,

Petitioners

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

———

On Petition for Review from the Board of Immigration Appeals
Agency No. A79-307-567, A79-307-568, A79-307-569

———

Submitted Under Third Circuit LAR 34.1(a): November 12, 2004

Before: McKEE and CHERTOFF, *Circuit Judges,* and
Buckwalter,* *Senior District Judge.*

(Filed December 16, 2004)

———

OPINION

———

Chertoff, *Circuit Judge.*

_____

* Honorable Ronald Buckwalter, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Setiawan Hartono ("Hartono") along with his wife, Yenni Dolly ("Dolly"), and minor daughter, seek review of a final order of removal issued by the Board of Immigration ("BIA"). We will affirm the decision of the BIA and deny petition for review.

I.

Hartono, a native of Indonesia and former resident of Semarang, arrived in the United States with his wife and minor child on November 10, 2000, on visitor visas. They were authorized to stay in the United States until May 9, 2001. The petitioners remained in the United States beyond that time. They were later served with a Notice to Appear charging that they were subject to removal as aliens without valid entry documents.

Petitioners applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), on grounds that they would be persecuted in Indonesia on account of their Chinese ethnicity and Christian religion. At a hearing before an Immigration Judge ("IJ"), Hartono based his claims on six different events:

(1) During the Semarang riots in 1980, Hartono's home was stoned and his neighbor's house was burned. Hartono's father was struck by a stone during the rioting. Hartono was unable to return to school for approximately two to three weeks. Hartono testified that he believes his family was targeted because they were Chinese.

(2) In 1996, when Hartono was driving children to Sunday school, a native

Indonesian pulled up alongside his vehicle, grazed it, and then confronted him. When Hartono told the man he was taking the children in his car to Sunday school, the man grabbed him by the shirt and broke the mirror of Hartono's car. The children started screaming and the assailant drove off. Hartono testified that he did not report the incident to the police because he believed it would have been futile to do so.

(3) In 1996 or 1997, Hartono's church received two bomb threats in a two-week period. Hartono's church was closed twice for a three-week period due to the threats. Hartono testified that he did not know who made the threats but presumed that they were made because it was a Christian church.

(4) In 1997, Hartono and Dolly (then Hartono's fiancee) were confronted by five or six teenage native Indonesian boys on their way to Dolly's home. The boys allegedly teased them for being Chinese. The boys then attacked Hartono until he fell to the ground. One of the boys also touched Dolly in an inappropriate fashion. At that time, a police officer came to the scene. The police officer eventually scared the boys off. The police officer then asked Hartono if he was Chinese. He told Hartono that he was not allowed on the road where the assault took place. Hartono testified that he did not know what the police officer meant, but assumed that it had to do with him being Chinese.

(5) On May 13, 1998, Hartono's daughter, Fidelia, was born. Hartono and Dolly had great difficulty getting to the hospital due to a series of riots that broke out at that time. Hartono testified that he stayed in the hospital for five days because it was too

3

dangerous to go outside. On cross-examination, however, Hartono conceded that he left the hospital during those five days to go the ATM and "buy things."

(6) Hartono owned a trucking company that he inherited from his parents. Out of the eight drivers employed by Hartono, only one of them was Chinese. The rest of the drivers were Indonesian. During the 1998 riots, Hartono's trucks were broken into six or seven times and the merchandise in the trucks was stolen. Hartono testified that he reported the break-ins to the police, but the police did nothing. Hartono testified that he believed the police did nothing because they thought they could not find the culprit.[2]

The IJ denied petitioners' claims for asylum, withholding of removal, and CAT protection. The IJ found that the petitioners had failed to present credible evidence to support their requests for asylum and that petitioners' application for asylum was knowingly frivolous. The IJ also found that, even assuming petitioners were credible, that they had failed to present substantial evidence of any prior persecution or any reasonable fear of future persecution if they were returned to Indonesia. As a result, the IJ determined, petitioners also failed to meet their burden of proof required for withholding of removal and CAT.

The BIA affirmed the IJ decision. The BIA, however, overruled the IJ's finding that petitioners had filed a frivolous asylum application.

---

[2] Dolly's corroborative testimony was roughly identical to Hartono's testimony, but for some minor differences in detail.

4

## II.

Because petitioner failed to challenge the IJ's decisions regarding credibility, withholding of removal and CAT protection determinations, the only issue this Court must address is whether Hartono met his burden of proving eligibility for asylum based on past persecution or a well-founded fear of future persecution.[3] See F.D.I.C. v. Deglau, 207 F.3d 153, 169 (3d Cir. 2000) (challenge waived if not raised in opening brief).

To be eligible for asylum in the United States as a refugee, an alien must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). IJ or BIA findings are reviewed under the "substantial evidence" standard. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Under this deferential standard, IJ or BIA "findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-484 (3d Cir. 2001). We will examine Hartono's claims of past persecution and well-founded fear of persecution, in turn.

## A.

Hartono first argues that the BIA's determination that he had not established past

---

[3] Because the government does not contest the BIA's reversal of the IJ's finding that petitioner's application for asylum was frivolous, we need not address this issue on appeal. We also note that the resolution of this case does not rest on the IJ's adverse credibility finding.

5

persecution was not supported by the record evidence.  We disagree.

"To establish eligibility for asylum on the basis of past persecution, an applicant must show: (1) an incident, or incidents that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds, and (3) is committed by the government or forces a government is either unable or unwilling to control." Abdulrahman v. Ashcroft, 330 F.3d 587 (3d Cir. 2003).

Based on this standard, Hartono's claim for past persecution must fail.  The majority of evidence put forth by Hartono is consistent with acts of private violence that fall short of persecution on account of race, nationality, or origin.  For example, the altercation Hartono experienced with the native Indonesian while driving the children to Sunday school, could have just as easily been motivated by road rage.  The looting of Hartono's trucks and Hartono's prolonged stay in the hospital appear to be the unfortunate products of the rioting.  Similarly, Hartono has furnished no evidence, short of his own speculation, that the stoning of his home as a youth, was perpetrated on account of race or religion rather than on account of civil strife.  This leaves us with the church bomb threats and the street fight with the teenage Indonesians, provoked by Hartono's race.  These sporadic occurrences, even if indicative of prejudice, do not rise to the level of persecution necessary to establish eligibility for asylum.

Moreover, Hartono has not proven that the alleged persecution he suffered at the hands of different sets of private groups of attackers was perpetrated by persons the

6

government was unwilling or unable to control. In the majority of Hartono's claims, Hartono admitted that he did not seek the police's help. In the street fight with the teenage Indonesians, Hartono recognizes in his asylum application that "fortunately" the police office arrived and caused the youths to "back off." (AR 188.) In the only other instance where Hartono sought police help, Hartono only speculates that the police did nothing to find the culprits of the truck looting.

B.

Hartono also argues that the BIA's determination the he failed to establish a well-founded fear of persecution was not supported by the record evidence. Again, we disagree.

Where past persecution is not established, an applicant for asylum can demonstrate that he or she has a well-founded fear of persecution. Gao v. Ashcroft, 299 F.3d at 272. Demonstration of a well-founded fear of persecution carries both a subjective and objective component. The applicant must "show that he has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." Chang v. INS, 119 F.3d 1055, 1066 (3d Cir. 1997) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987)).

Subjective component aside, Hartono's documentary evidence consisting of reports on Indonesia issued by the State Department, does not establish that a reasonable person in Hartono's circumstances would fear persecution. To be sure, there is evidence

7

of horrific violence against Christians at the hands of Muslims (and vice-versa) in certain parts of Indonesia.   The evidence put on by Hartono, however, fails to establish that fear of religious persecution exists country-wide.  The most pertinent pieces of documentary evidence relating to Hartono's claims focus on the harassment and violence experienced by Christians in the Moluccas.[4]  (App. 91.)   There is no indication that this level of violence has been experienced by Christians in Central Java (Semarang) where Hartono previously resided.  Abdille, 242 F.3d at 496 (upholding BIA's determination that petitioner failed to establish well-founded fear on the premise that record evidence did not support a fear of persecution throughout South Africa).

Similarly, the State Department reports regarding native Indonesian treatment of Chinese Indonesians, also fails to establish a well-founded fear of persecution.  The report notes that while there are still instances of discrimination and harassment, "[r]acially motivated attacks against Sino-Indonesians have dropped sharply since mid-1998..." (App. 199.)  Under the deferential standard, we cannot say that such evidence compels a conclusion contrary to the IJ and BIA's determination that Hartono failed to establish a well-founded fear of persecution.

### III.

In sum, there is not substantial evidence on the record to reverse the IJ's finding that Hartono failed to establish past persecution or a well-founded fear of persecution.

---

[4] Especially in the cities of Ambon, Keswui, Buru, Seram and other parts of the Maluku province.  (App. 98.)

Consequently, there is no evidence to support the higher standards required for withholding of removal and CAT protection, even if these two issues had not been waived on appeal.   Accordingly, we will deny petition for review.